# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| RODNEY WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:08CV0251 AGF |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before this Court[1] for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Rodney Williams was not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. For the reasons set forth below, the decision of the Commissioner shall be affirmed.

Plaintiff, who was born on October 30, 1963, filed for disability benefits on December 21, 2005, at the age of 42, claiming a disability onset date of September 19, 2005, due to spine and lower back problems, epilepsy, and high blood pressure. After Plaintiff's application was denied at the initial administrative level, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and such a hearing was held on July 3, 2007. In a decision dated August 7, 2007, the ALJ found that Plaintiff had the residual

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

functioning capacity ("RFC") to return to his former work as a salesperson in a pawn shop, and was therefore, not disabled. Plaintiff's request for review by the Appeals Council of the Social Security Administration was denied on December 22, 2007. Plaintiff has thus exhausted all administrative remedies and the ALJ's decision of August 7, 2007, stands as the final agency action now under review.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence on the record as a whole. Specifically, Plaintiff argues that the ALJ's RFC assessment is not supported by medical evidence, that the ALJ improperly discounted Plaintiff's subjective complaints, and that the ALJ improperly relied upon the testimony of a vocational expert (VE), in response to a hypothetical question that did not capture the true extent of Plaintiff's impairments.

**Work History and Earnings Record**

Plaintiff reported on his application forms that he worked as an apprentice carpenter form 1989 to 1992, as a sales associate in a pawn/jewelry shop from 1995 to 1997, and as a materials handler for a recycling manufacturer from 1998 to September 18, 2005, his alleged disability onset date. He wrote that he stopped working because "my condition became so bad that I couldn't do my job anymore." (Tr. 103-04, 119.) He reported that his work as a sales associate involved walking, standing, sitting, stooping, kneeling, crouching, handling/grasping items, writing/typing, lifting items such as TVs from cars three to four times a day, carrying up to 50 pounds, and carrying ten pounds frequently. (Tr. 121.) Plaintiff earnings records show annual wages of less than $10,000

2

until 1987, when he earned approximately $15,000; under $10,000 from then until 1995, with the exception of 1989 when he earned approximately $13,000 (with no wages in 1991 and 1992); and wages fluctuating between approximately $10,000 and $23,000 from 1995 to 2005.  (Tr. 87.)

**Medical Record**

On September 2 and November 3, 2005, William Feinstein, M.D., performed surgery on Plaintiff for carpal tunnel syndrome, first on his left arm, and then on the right, following which Plaintiff was referred to physical therapy.  Meanwhile, Plaintiff was seen by orthopedic surgeon R. Peter Mirkin, M.D., on October 17, 2005, for a consultation on Plaintiff's complaints of back pain.  Dr. Mirkin noted that 12 years ago Plaintiff underwent a lumbar laminectomy, and recently developed pain in his lower back and buttocks when kicking material into a conveyer at work on September 1, 2005.  On physical examination, it was noted that Plaintiff walked with an upright gait, had a range of motion of the lumbar spine 70 percent of normal, and had difficulty squatting and rising from a squatting position.  Straight leg raise testing elicited buttock pain on the left at 60 degrees and was negative on the right.  Dr. Mirkin diagnosed lumbar strain with some degenerative changes in the lumbar spine.  Plaintiff was offered a lumbar epidural steroid injection for his radicular symptoms and Dr. Mirkin opined that Plaintiff could work with a  25-pound lifting restriction.  (Tr. 225-27.)  The next day, Plaintiff was given the epidural injection and referred for physical therapy.

On October 19, 2005, Plaintiff reported to physical therapy for an initial evaluation, with complaints of back pain and pain in the left buttocks. The therapist, Jay Diamond, noted the presence of magnified behavior as evidenced by an Oswestry score of 56 percent and 4/5 positive responses to, and positive Waddell testing, which indicated a possible non-organic basis to his pain complaints. (Tr. 238-239). On October 28, 2005, the therapist noted that Plaintiff's responses to movement testing did not demonstrate any typical mechanical low back dysfunction. (Tr. 402-03).

When Plaintiff saw Dr. Mirkin on November 2, 2005, Plaintiff had received two pain relief injections, but Plaintiff reported that they had not helped and that he had persistent pain. Dr. Mirkin noted that x-rays revealed severe degenerative changes at L4-5 and LS-S1. On examination, Plaintiff walked with a limp, had a limited range of motion of the lumbar spine, and straight leg raising elicited buttock pain bilaterally. Plaintiff was again placed on a 25-pound lifting restriction. (Tr. 224.)

On November 23, 2005, Plaintiff's physical therapist noted that Plaintiff demonstrated no difficulty ambulating to or from the clinic, and performed the entire in-house exercise session with minimal outward signs of distress or voicing symptomatic complaints. (Tr. 395). On November 28, 2005, after ten sessions of physical therapy for his back pain, Plaintiff's therapist again noted the test result indicating magnified pain behavior. (Tr. 232-33.)

When Plaintiff saw Dr. Mirkin on November 30, 2005, in follow up for his back pain, Plaintiff reported that his therapy was not helping and that he continued to have

persistent pain in his back and down his legs.  On examination, Plaintiff walked with a limp and examination of the lumbar spine and straight leg raising elicited buttock pain with decreased reflexes.  An MRI showed degenerative disc protrusions at L4-5 and L5-S1.  (Tr. 223.)

A Work Conditioning Exit Evaluation dated January 9, 2006 (related more to Plaintiff's carpal tunnel syndrome than his back pain), found that Plaintiff's ability to lift floor to waist, waist to shoulder, and shoulder to overhead was limited such that he was capable of performing at the sedentary exertional level "below the waist," whereas he could perform at the medium exertional level "above the waist."  Plaintiff also displayed an ability for frequent sitting and standing, but only occasional bending, reaching, squatting, kneeling, and crawling.  The evaluator stated, however, that these results were based on Plaintiff's "self-limiting effort" and "symptom magnification behaviors," and that therefore, no specific performance restrictions would be recommended.  (Tr. 328.) On January 10, 2006, Dr. Feinstein saw Plaintiff for follow up for his carpal tunnel syndrome and released him to work regular duties.  (Tr. 287.)

In a letter dated February 7, 2006, Dr. Mirkin wrote to Plaintiff's employer's workers' compensation insurer regarding the letter opinion of another physician who had opined that Plaintiff had degenerative disc disease and that the most appropriate plan was to give Plaintiff "considerably more time" to recover and get him back in a vigorous rehabilitation program, and encourage him to participate in light duties at work.  Dr. Mirkin noted that he had also viewed an "extensive" videotape (apparently made and sent

to him by the insurer) depicting a person who appeared to be Plaintiff getting in and out of a car at a car wash, crawling while vacuuming his car, standing for "long periods," bending, stooping, and squatting without any pain behavior. Dr. Mirkin wrote that treatment options included anti-inflammatory medications, aggressive rehabilitation therapy (per the suggestion of the other physician), and surgical intervention. He wrote that he had no problems with the other physician's plan, but noted that there had been little progress with conservative treatment since October 2005. (Tr. 450.)

Plaintiff was seen by Dr. Mirkin on March 1, 2006, with complaints of severe pain in the back and in the left leg. On examination, Plaintiff walked with a limp, was unable to squat and heel and toe walk, and had weakness of the left quadriceps and dorsiflexor. (Tr. 449.) An April 3, 2006 lumbar discogram showed severe degeneration at L4-5 L5-S. Plaintiff told Dr. Mirkin that he could not live with the pain, and Dr. Mirkin told him that a revision decompression at L4-5 and L5-S1 with a fusion could be considered. Dr. Mirkin indicated that Plaintiff was able to work, with his previous 25-pound lifting restrictions. (Tr. 448, 452.) On April 7, 2006, Dr. Mirkin prescribed Darvocet and noted that fusion surgery was being considered. (Tr. 448, 456.)

The record includes clinical progress notes from Grace Hill Neighborhood Health Center from January 2006 through March 2007, for medical follow-up and medication refills for high blood pressure and a seizure disorder. The notes, which are partially illegible, mention depression. (Tr. 459-70.) A June 15, 2006 x-ray showed minimal degenerative change of the lumbar spine. (Tr. 471.) A Physical RFC assessment

apparently completed on September 19, 2006, by a "disability determination service examiner,"[2] indicated that Plaintiff could lift 20 pounds occasionally and ten pounds frequently, could stand and/or walk six hours in an eight hour day, could sit six hours in an eight hour day, and had unspecified limitations in the upper extremities. Plaintiff could only occasionally climb ladders, ropes, scaffolds, stoop, crouch, or crawl. (Tr. 440-46.)

**Evidentiary Hearing of July 3, 2007 (Tr. 28-44)**

Plaintiff and a VE testified at the hearing. At the start of the hearing Plaintiff's counsel pointed out to the ALJ that the RFC assessment form that was in the record was missing the last page, and so it was not clear whether it was prepared by a medical source. Nothing was done to resolve this matter and the ALJ began his questioning of Plaintiff. Plaintiff testified that he was 43 years old, went to high school almost to graduation and subsequently obtained a GED, and had taken a welding course through a vocational-tech program. He testified that he had worked as a material handler, an inventory clerk, a sales associate at the counter of a pawn shop, and a carpenter. He stated that the salesperson job lasted almost three years. His last job was in material handling, a position from which he was terminated on September 19, 2005 for sleeping on the job. He filed for unemployment compensation, but his request was denied.

_____

[2]    The signature and date page of this form is not in the record before the Court, nor as will be noted above, was it before the ALJ. Plaintiff states in his brief that the form was completed by a "service examiner" and the Commissioner does not dispute this.

Plaintiff acknowledged that he had filed a number of worker's compensation claims, including claims that were still pending for carpal tunnel and back injuries. He testified that he had no earnings in 1991 and 1992, and minimal earnings in 1993, due to a three-year recovery period following back surgery in 1991. He also recounted that he had carpal tunnel surgeries on both wrists, at separate times, in 2005. He testified that he still had back problems, and that while riding the bus to the hearing that day, he had increasing pain that shot from his buttocks all the way down to his knee on the right side. Plaintiff stated that his carpal tunnel caused both of his hands to "light up," and that he experienced "extreme pain" in the left hand.

Plaintiff testified that the insurance company did not approve the surgery he had discussed with Dr. Mirkin. Upon questioning by the ALJ regarding Dr. Mirkin's reference to a surveillance videotape, Plaintiff testified that he had not previously heard of such a tape. Plaintiff testified that he attended work hardening in 2006, lifting light weights -- about five pounds -- and carrying them short distances (ten feet, then 15 feet) in five foot increments. When asked if he would agree with a statement by Dr. Mirkin that he (Plaintiff) could lift 25 pounds, Plaintiff responded, "if I can't lift 25 pounds, whether he says I can lift it or not, I'm not going to lift 25 pounds." Plaintiff stated that he was currently going to Grace Hill for treatment.

On questioning by his attorney, Plaintiff stated that he still had problems with his hands, and although he could grab large objects, he did not always have control of them and that "a positive grip may not kick in" if he tried to list such objects too quickly.

Plaintiff believed that was due to "severe spinal nerve damage," and that all his limitations were tied directly to his back problems. He stated that he recently started having problems closing buttons on his shirts due to a coordination problem, worse in his left hand. Plaintiff further stated that due to coordination problems, he did not pick up small objects, such as coins, from a table, but rather would sweep them into his hand. He was able to reach both hands out in front of him, but could not hold them in that position. Reaching over his head was not painful, but caused a "weaking sensation."

Plaintiff testified that due to his back pain he had problems walking and walked with a slight drag in his right leg. He testified that he had recently fallen going up a flight of steps and landed on one knee. He could walk a block or two before having to sit down due to "extreme" pain in his thighs. He had to lean against something when standing in one place due to the pain in his calves. Plaintiff also stated that sitting was uncomfortable unless he was slouching. He stated that he was in an "extreme amount of pain" during the hearing due to leaning back in the chair.

Plaintiff's attorney questioned him regarding records from Grace Hill that diagnosed Plaintiff with depression. Plaintiff testified that he had had crying spells that began in December 2006, and that he only slept for two and a half to three hours before waking up. He did bathe and change clothes daily, and he had had an "abrupt" change in his appetite which caused him to lose 25 pounds in the preceding two months. Plaintiff testified that he obtained a prescription from Grace Hill to help with the depression, but that it did not help and gave him headaches.

Plaintiff stated he also had a seizure disorder and had had approximately eight grand mal seizures (wherein he would kick and bite his tongue) between September 2005 and the date of the hearing.  He added that a seizure may have been what caused his recent fall on the stairs.  He was currently taking Dilantin for this problem.

The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and work experience, who was able to carry up to 20 pounds occasionally and ten pounds frequently, stand or walk for six hours out of eight, sit for six hours out of eight, and occasionally climb ropes, ladders and scaffolds, occasionally stoop, crouch or crawl; had limited ability to push and pull with his arms; and should avoid exposure to the hazards of moving and dangerous machinery and unprotected heights.  The VE testified that such an individual could work as a pawn shop salesman, but that Plaintiff's other prior jobs would be considered medium to heavy work, precluded by the abilities and restrictions noted above.  The VE testified that the pawn shop salesman job was included under the code for retail sales clerk in the Dictionary of Occupational Titles ("DOT"), work performed at the light exertional level.  The ALJ then changed the hypothetical a bit to reference an individual who could occasionally climb stairs and ramps, never climb ropes, ladders and scaffolds, and who had to avoid reaching in all directions and more than moderate exposure to vibration.  The VE again testified that such an individual could work as a pawnshop salesman.

In response to questioning by Plaintiff's counsel, the VE testified that if Plaintiff's testimony were believed, such that (in addition to the limitations noted in the previous

questions) he could only walk a block or two and stand for a few minutes, and had significant/marked difficulty with fingering, feeling, and grasping, there would be no past or other jobs that Plaintiff could perform.

**ALJ's Decision of August 7, 2007 (Tr. 13-20)**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since September 19, 2005, the alleged onset date of disability. The ALJ next found that Plaintiff's depression was not severe, in that it did not significantly limit his ability to do basic work activities, but that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, bilateral carpal tunnel syndrome status post release surgeries, and a seizure disorder. The ALJ determined these impairments, singly or in combination, did not meet or equal the requirements of any of the deemed-disabling impairments listed in the Commissioner's regulations.

The ALJ turned to consider whether Plaintiff had the RFC to perform past work or other work, in light of the factors relevant to this inquiry as set forth in <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1321-22 (8th Cir. 1984). The ALJ found that Plaintiff had the RFC to perform light work,[3] except that he could only occasionally climb ramps or stairs,

---

[3] "Light work" is defined in 20 C.F.R. § 404.1567(b) as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of up to 10 pounds; and that might require a good deal of walking or standing, sitting most of the time, and some pushing and pulling of arm or leg controls. Social Security Ruling (SSR) 83-10 elaborates that the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8 hour work day, while sitting may occur intermittently during the remaining time; that the lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping; and that

and had to avoid climbing ropes or ladders, repetitive reaching, moderate exposure to vibrations, and all exposure to workplace hazards, such as unprotected heights and dangerous machinery. The ALJ summarized Plaintiff's testimony and the medical record, and found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms to some extent, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible and were inconsistent with the preponderance of the evidence as a whole.

In support of this finding, the ALJ stated that Plaintiff's allegation of disabling pain was not consistent with the evidence that Plaintiff did not require regular prescription medication or physical therapy. The ALJ also noted that Plaintiff stopped working at his last job (as a material handler) because he was fired for falling asleep at work, which failed to show that he was unable to work due to his impairments. The ALJ observed that the only long-term restriction imposed on Plaintiff was to avoid lifting more than 25 pounds at one time. The ALJ pointed to the tests administered by Plaintiff's physical therapist that suggested that Plaintiff reported pain inconsistent with his symptoms. The ALJ noted that although he had not viewed the videotape referenced by Dr. Mirkin, Dr. Mirkin's observations indicated that Plaintiff was performing activities that he claimed he was not capable of performing.

_____

many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. SSR 83-10, 1983 WL 31251, at *6 (1983).

The ALJ commented that Plaintiff had a pending workers' compensation claim, and that he, thus, had a financial incentive to maximize his symptoms. The ALJ noted that a person with a seizure disorder who was restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction did not have a significant effect on work existing on all exertional levels, and that Plaintiff's seizure disorder fell within this classification.

The ALJ stated that he accepted Dr. Mirkin's assessment of Plaintiff's functional abilities after Plaintiff had completed physical therapy. The ALJ found that Plaintiff could lift and carry as much as ten pounds frequently and 20 pounds on occasion, and that he could sit, stand, or walk, on and off, for up to six hours over the course of an eight hour workday. The ALJ found that Plaintiff was capable of performing his past relevant work as a pawnshop sales associate, as this work did not require the performance of work-related activities precluded by Plaintiff's RFC.

The ALJ found that in comparing Plaintiff's RFC with the mental and physical demands of the work, Plaintiff was able to perform the work as it was actually and generally performed. The ALJ explained that Plaintiff had the burden of showing that he was no longer able to perform his past relevant work, and concluded that such a showing had not been made.

## DISCUSSION

### Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, a court must affirm the Commissioner's decision "so long as it conforms to the law and is supported by substantial evidence on the record as a whole." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (citation omitted). This "entails 'a more scrutinizing analysis'" than the substantial evidence standard. Id. (quoting Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989)). The court's review "'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision'"; the court must "'also take into account whatever in the record fairly detracts from that decision.'" Id. (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001) (citation omitted)). Reversal is not warranted, however, "'merely because substantial evidence would have supported an opposite decision.'" Id. (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995) (citation omitted)).

> It is not the role of [the reviewing] court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo. If after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioners's findings, [the court] must affirm the denial of benefits.

Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. Jan. 2009) (citations omitted).

To be entitled to benefits, a claimant must demonstrate an inability to engage in any substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not

less than 12 months. 42 U.S.C. § 423(d)(1)(A); Barnhart v. Walton, 535 U.S. 212, 217-22 (2002). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If so, benefits are denied. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). A special technique is used to determine the severity of mental disorders. This technique calls for rating the claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Id. § 404.1520a(c)(3).

If the claimant does not have a severe impairment or combination of impairments that meets the duration requirement, the claim is denied. If the impairment is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the impairments listed in the Commissioner's regulation, 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, the claimant is conclusively presumed to be disabled. Otherwise, the Commissioner asks at step four whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work, if any, as he performed it or as generally performed in the national economy. If the claimant can return to past relevant work, the claimant is not disabled. Otherwise, the burden of proof shifts at step five to the Commissioner to demonstrate that

the claimant has the RFC to perform a significant number of other jobs in the national economy that are consistent with the claimant's vocational factors -- age, education, and work experience.

If a claimant can perform the full range of work in a particular category of work (very heavy, heavy, medium, light, and sedentary) listed in the Commissioner's regulations, the Commissioner may carry this burden by referring to the Commissioner's Guidelines, which are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairment. Where a claimant cannot perform the full range of work in a particular category due to nonexertional impairments such as depression, the Commissioner cannot carry the step-five burden by relying on the Guidelines, but must consider testimony of a vocational expert ("VE") as to the availability of jobs that a person with the claimant's profile could perform. Baker v. Barnhart, 457 F.3d 882, 888 n.2, 894-95 (8th Cir. 2006). Here, the ALJ decided at step four that Plaintiff could return to his past work as a salesperson in a pawn shop.

**RFC Assessment**

Plaintiff argues that the ALJ's determination that Plaintiff could perform sedentary work with some restrictions is not supported by the evidence. He maintains that Dr. Mirkin indicated that further back surgery was necessary and that the necessity for surgery and the work-conditioning assessment of January 9, 2006, "lead reasonably to the conclusion Plaintiff had not in fact recovered sufficiently" to work.

A disability claimant's RFC is the most he can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). In McCoy v. Schweiker, 683 F.2d 1138 (8th Cir. 1982) (en banc), the Eighth Circuit defined RFC as the ability to do the requisite work-related acts "day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." Id. at 1147. The ALJ's determination of an individual's RFC should be "based on all the evidence in the record, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).

Although a claimant's RFC is determined at step four of the sequential evaluation process, where the burden of proof rests on the claimant, the ALJ bears the primary responsibility for determining a claimant's RFC. Id. "An RFC is a medical question, and the ALJ's determination of a claimant's RFC must be supported by some medical evidence of the claimant's ability to function in the workplace." Flynn v. Astrue, 513 F.3d 788, 792 (8th Cir. 2008) (citations omitted). This Court is required to affirm the ALJ's RFC determination if that determination is supported by substantial evidence on the record as a whole. See McKinney, 228 F.3d at 862-63.

Here, it is clear that Plaintiff experiences some back pain. The issue, however, is not the existence of pain, but whether the pain that Plaintiff experiences precludes the performance of substantial gainful activity. See Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir. 1991). Plaintiff's arguments are unpersuasive for several reasons. First, Dr.

17

Mirkin never stated that further back surgery was necessary before Plaintiff could work again. Rather, he opined that Plaintiff could return to work with a 25-pound lifting restriction, and he was willing to consider surgery if Plaintiff wanted to pursue that treatment option. Second, Plaintiff also mischaracterizes the January 9, 2006 Work Conditioning Evaluation as establishing that he would not do light work, with the restrictions found by the ALJ. As noted above, that report states that the results were based upon self-limiting efforts. Moreover, even if the evidence might support a more-restrictive RFC than that assessed by the ALJ, reversal of the ALJ's decision is not warranted because it is supported by Dr. Mirkin's medical opinion that Plaintiff was able to work with the 25-pound lifting restriction. "It is not the role of [the reviewing] court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. Jan. 2009) (citation omitted). "'If after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioners's findings, [the court] must affirm the denial of benefits.'" Id. (quoting Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996)).

In sum, the Court finds that sufficient medical evidence, most notably, Dr. Mirkin's opinion, supports the ALJ's finding that Plaintiff's exertional impairments did not preclude him from doing light work, with some restrictions. The Court notes that on January 10, 2006, Dr. Feinstein released Plaintiff for regular work duties following the carpal tunnel surgery.

**Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ improperly assessed Plaintiff's credibility with respect to the severity of his limitations. In Polaski v. Heckler, 739 F.2d at 1321-22, the Eighth Circuit held that the "absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints." The ALJ must also consider "observations by third parties and treating and examining physicians relating to such matters as (1) the claimant's daily activities; (2) the frequency, duration, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." Id. "If the ALJ discredits a claimant's credibility and gives a good reason for doing so, [the court] will defer to the [ALJ's] judgment even if every factor is not discussed in depth." Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001).

Here, Plaintiff argues that the notations in the record with regard to Plaintiff's exaggeration of his physical impairments might have indicated a psychological overlay to Plaintiff's problems, rather than a reason not to find Plaintiff credible. The Court finds this argument unpersuasive as there is no hint in the record that Plaintiff suffers from a mental impairment that would cause symptom exaggeration. Plaintiff also argues that the ALJ erred in relying, in part, on the fact that Plaintiff was fired from his last job. However, courts have found it relevant to credibility when a disability claimant stops

working for reasons other than his medical condition.  See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005).

Plaintiff further asserts that the ALJ erred in taking into account the surveillance tape mentioned by Dr. Mirkin, in light of the fact that, according to Plaintiff, Dr. Mirkin, who saw the tape, still felt that back surgery was needed.  As noted above, however, this mischaracterizes Dr. Mirkin's opinion with regard to the necessity for back surgery. While the tape was not viewed by the ALJ and has not been made a part of the record before the Court, Plaintiff does not argue that Dr. Mirkin's description of its contents was not accurate.  In any event, the record does not suggest that the ALJ gave undue weight to the tape.

Plaintiff also challenges the ALJ's statement that Plaintiff's credibility was eroded by the fact that he had a pending worker's compensation claim and, thus, a motivation to exaggerate his symptoms.  It is true, as Plaintiff states, that all disability claimants have a financial motivation in seeking disability benefits.  But not all have pending workers' compensation claims which may motivate them to exaggerate their symptoms.  Here, this was just one factor that the ALJ mentioned, and the record does not indicate that the ALJ gave undue weight to this factor.

Upon review of the record, the Court does not believe that the ALJ committed any reversible error in his evaluation of Plaintiff's credibility.

**Hypothetical Question Posed to the VE**

Plaintiff's last argument is directly dependent on his previous arguments. He asserts that because the ALJ incorrectly assessed Plaintiff's RFC and credibility, the hypothetical question posed to the VE did not capture the concrete consequences of Plaintiff's impairments. The discussion above defeats this argument. See, e.g., Randolph v. Barnhart, 386 F.3d 835, 841 (8th Cir. 2004) (explaining that a question posed to a VE need not include alleged limitations which the ALJ properly discredits). The Court notes that testimony by a VE is not required, but is permissible at step four of the evaluation process. See 20 C.F.R. § 404.1560(b)(2) (providing that a VE may offer expert opinion testimony at strep four in response to a hypothetical question about whether a person with the limitations imposed by the claimant's medical impairments can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy).

## CONCLUSION

The Court believes that the Commissioner's decision is supported by substantial evidence in the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.


_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated on this 27th day of March, 2009.